GENERAL ELECTRIC COMPANY,
Plaintiff,

v.

Robert C. WATSON, Commissioner of
Patents, Defendant.

Civ. A. No. 49–59.

United States District Court
District of Columbia.

Nov. 3, 1960.

Harry L. Kirkpatrick and William W. Rymer, Boston, Mass., and Oscar B. Waddell, Washington, D. C., for plaintiff.

Jack E. Armore, Washington, D. C., for defendant.

HOLTZOFF, District Judge.

This is an action against the Commissioner of Patents by an applicant for a patent whose application was rejected by the Patent Office. Plaintiff seeks an adjudication that it is entitled to a patent on its application.

The application in question was filed August 1, 1952, in behalf of Donald G. Sanders, Bruce O. Buckland, and Cecil M. Gardiner, who assigned their rights to the plaintiff. The application is numbered 302,238, and it is entitled, "Fuel Oil for Oil-Fired Equipment".

The alleged invention is a fuel oil to be used for oil-fired gas turbines as well as other oil-fired equipment. The specific fuel oil that the applicants claim to have invented is the residue or the residual oil remaining after the other oils are distilled from petroleum. The purpose of using this residual oil is to obtain a cheaper type of fuel that would enable economic operation of gas turbines and similar equipment. The particular invention claimed is such a residual oil containing an additive such as calcium, as well as another ingredient such as sodium, in proportions specified in the claims.

The applicants were confronted with the problem of developing a cheap fuel for gas turbines in order to enable their economic operation. For that purpose they desired to use the residual oil to which reference has been made which would constitute an inexpensive type of fuel. It was found, however, that this residual oil which contained a residue of ash caused corrosion. The corrosion was such as to make impossible the operation of a gas turbine with this fuel for more than two or three weeks at a time, or possibly a month or two. The ultimate problem then was to modify this residual fuel oil so as to eliminate its corrosive properties.

As a result of several years of experimentation the applicants found that by adding another ingredient, referred to generally as an additive, such as calcium, in an atomic ratio to venadium pentoxide of four to one or greater—the venadium pentoxide being one of the original ingredients of the oil—and further by in-

cluding sodium in a very low atomic ratio, not more than 0.7 to the venadium, a compound was produced which eliminated the corrosive properties of the original product. This composition is claimed as the invention.

The evidence tends to show that a research group was employed by the plaintiff to devote a considerable portion of their time for two or three years or more to this development, and that a considerable amount of expense was incurred in connection with this project amounting to about $250,000. Testimony was introduced indicating that a great deal of oil compounded in accordance with the teaching of the applicants has been used on the market and that as a result the use of gas turbines burning residual oil has greatly increased.

■ Necessarily, the fact that a considerable amount of reseach preceded the alleged invention, and that there has been general acceptance by industry of the final product are weighty circumstances in favor of the plaintiff, but they are far from conclusive. It is true that apparently the applicants produced an important substance or product widely used in industry and thus have made a real contribution. This circumstance, however, obviously is not alone sufficient to justify the issuance of a patent.

The application was rejected by the Patent Office and this action is being resisted on the ground that what the applicants have done did not constitute an invention in the light of a prior disclosure, namely, an article written by one C. T. Evans, Jr., entitled, "Oil Ash Corrosion of Materials at Elevated Temperatures", and published in 1950. The Evans article discloses the basic conception first of the problem, and second that it may be solved by the use of an additive in connection with the making of the final product. The additive disclosed by Evans is calcium, although he suggests other possibilities as well. What the inventors did in this instance then was to work out by experimentation and trial and error, the precise proportions of the various constituents and ingredients of the final compound that would give the best results. The basic idea or the fundamental conception of including additives was disclosed by Evans.

The Examiner, in his answer before the Board of Appeals of the Patent Office, stated on this point that:

"Even assuming for the sake of argument that a criticality in the claimed atomic ratios has been conclusively demonstrated, no invention is seen in simple and routine experimentation to determine ideal proportions, once the problem has been recognized and the line of investigation necessary to overcome said problem has been indicated."

The Board of Appeals stated that:

"The mere determination of the proportions or limits to which such Venezuelan residual oil may be modified by additives to produce the effect of lessening corrosiveness would have involved no more than a matter of routine determination, and cannot be considered as involving a matter of patentable merit."

■ The Court is impressed with this reasoning of the Patent Office tribunals. After all, every invention is based on a theoretical concept that may be said to be preceded by a discovery. Here the Patent Office found that it was Evans who had the concept or the discovery and that the work actually done by the applicants was to work out the details.

This case, in this respect, may be contrasted very sharply from the decision of this Court in General Tire & Rubber Co. v. Watson, D.C., 184 F.Supp. 344. Both the last mentioned case and the case at bar involve a product that is of value to commerce and industry. In the General Tire & Rubber case, however, it was the applicants who developed the basic concept or made the discovery on which they perfected a concrete embodiment of the invention. In the case at bar, however, it would seem that the basic concept on which the applicants worked had been available to them from a prior source, to wit, Evans' publication, and what they

did was, important as their work may be, to continue experimentation until they reached a concrete embodiment of the idea conceived by Evans.

But, we do not stop here, and the Patent Office does not rely entirely and solely on the reasoning just discussed. It is claimed that Evans disclosed the exact proportions claimed by the applicants. This necessitates a reference to the claims. The claims of the application prescribe the use of an additive such as calcium and others that are enumerated. The atomic ratio of the additive to the venadium component is to be not less than four to one, and the atomic ratio of sodium to venadium to be no greater than 0.7. The invention contemplates the use of both ratios simultaneously.

The Evans article discloses first the use of the atomic ratio of more than four to one in respect to the relation of the additive to the venadium component. On page 98 of his article Evans suggests a weight ratio of three to one, which concededly amounts to an atomic ratio of more than four to one.

As to the ratio of sodium to venadium, it appears from page 70 of the same article that Evans, in connection with his experiments, worked on a number of samples of oil. One of those samples had a percentage of 44.5 of venadium and two per cent of sodium. It is not disputed that these figures can be reduced to an atomic ratio of 0.1 which is, of course, less than the 0.7 which the claims set forth as a maximum. Consequently, the proportions claimed by the applicants were disclosed by the Evans article.

It is urged, however, that the advantages of these particular ratios, especially the sodium ratio, was not pointed out, perhaps not even known to Evans, and further that he did not advise the use of these ratios but merely set forth the analysis of the samples that he employed. It has been held by the Supreme Court in the celebrated DeForest-Langmuir litigation that it is immaterial whether an inventor knows the scientific explanation of his disclosure. The fact that the

disclosure was made and was available is all that is necessary. The De Forest Radio Co. v. General Electric Co., 283 U.S. 664, 684, 686, 51 S.Ct. 563, 75 L.Ed. 1339. So, too, it has been held that even an accidental disclosure, if clear, may constitute an anticipation. In re Wagner, 63 F.2d 987, 988, 20 CCPA 985. Application of Seid, 161 F.2d 229, 231, 34 CCPA 1039.

It should be noted, however, that actually Evans did point out on page 102 of his article the importance of an excess of lime, i. e., calcium.

In this action the defendant also relies on two patents that were not cited in the Patent Office tribunals because the applications resulting in them were co-pending with the applicants' application. Those are patents to Baldeschwieler number 2,911,292, issued on November 3, 1959; and patent to Taylor, 2,781,005, issued on February 12, 1957. Each of them discloses the use of different additives in the fuel oil of the type involved in this case.

In the light of the foregoing discussion the Court reaches the conclusion that the Patent Office committed no error in rejecting the application. In fact, if this were a trial *de novo*, which it is not, of course, the Court would reach the same result.

It must be said, of course, that the applicants made a valuable contribution to commerce and industry. There are, however, many valuable and important contributions to commerce and industry that do not constitute inventions or discoveries within the meaning of the patent laws because they do not involve the use of the inventive faculty but are the product of skills of other types. They may comprise assiduous experimentation by trial and error in order to determine best proportions of known ingredients to achieve a well-known and pre-determined purpose. They may consist of harnessing or adapting a known theoretical formula to an industrial use. They may comprehend the development of an efficient technique popularly denominated as known-how. Such contributions are fre-

quently much more valuable and essential than many an invention, but the law does not reward them with a patent monopoly.

Accordingly, the Court will render judgment in favor of the defendant, dismissing the complaint on the merits.

Consul will submit proposed findings of fact and conclusions of law.

The Court might add that it is greatly indebted to counsel on both sides for a very able and helpful presentation of this case in a very lawyer-like manner.