48 CCPA

### Application of Henry W. REESE.
### Patent Appeal No. 6660.

United States Court of Customs
and Patent Appeals.

June 2, 1961.

Alfred E. Page and Blum, Moscovitz, Friedman & Blum, New York City, for appellant.

Clarence W. Moore, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

SMITH, Judge.

Appellant seeks reversal of the decision of the Board of Appeals, which affirmed the examiner and held that claims 39–42, all of the claims in the case, are unpatentable over the prior art, and for the further reason that the application is barred by some twenty years of what the examiner and the board found to be prior public use.

The invention disclosed in the instant application, Serial Number 392,980, filed November 18, 1953, relates to improvements in a "Medicinal Carrier." One form of the invention, said to be es-

1. United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

pecially useful, is a tablet for insertion in the vaginal cavity where, upon disintegration of the tablet, a medicinal agent, which may also be a spermicide, is released.

The assignee of the present application is Fomos Laboratories, Inc. Applicant has been associated with Fomos Laboratories, Inc., since 1936, and his affidavits of record herein establish some of the historical background of the present invention. From the affidavits we find that Fomos Laboratories, Inc., has been making and selling vaginal tablets under the name "Fomos" since 1932, and that the subject matter of the claims on appeal relates to asserted improvements in such tablets.

The affidavits also establish that the original "Fomos" tablets were compounded from the same active ingredients as the tablet disclosed in the application before us, namely: sodium bicarbonate, boric acid, tartaric acid, a medicinal agent, a foaming agent, a wetting agent, filler, and a binder. These original tablets were intended to perform their function as carriers by dissolving upon contact with the moisture of the body cavity after which a reaction of the ingredients occurred resulting in the production of a gas-generated foam which carried the medicinal agent into contact with the walls of the body cavity.

It is asserted in the affidavits that in actual use, the original "Fomos" tablets did not always function as intended. Complaints were received from users claiming that the tablet did not dissolve, and thus was useless. Even when the tablet did dissolve, users frequently complained of a burning sensation resulting from the reaction. Moreover, reports indicated that the tablets were stable for something less than six months.

It was discovered that even with a fresh tablet, frequently there was insufficient body moisture to dissolve the tablet and permit reaction of the ingredients. It also was found that the tablet did not dissolve as rapidly as desired. Variations in the amount of body moisture available to support the desired reactions were found to be a principal reason why varying results were obtained from fresh undeteriorated tablets.

In order to assure the desired operation of the old "Fomos" tablets it was necessary to so compound them that they were readily reactive to small amounts of moisture. This resulted in the production of relatively unstable tablets which had an undesirably short shelf life. The contact of water vapor from the air caused the boric acid and tartaric acid of the tablets to react and produce more water, which, in turn, caused further interreaction of the constituents of the tablet. That reaction, for practical purposes, resulted in the deterioration of the tablets while still in the supplier's stock.

The tablets here disclosed as an improvement on the original "Fomos" tablets are asserted to have solved the problem of how to provide adequate moisture to facilitate the desired reaction under all conditions of use and yet to provide a tablet having an adequate shelf life. The tablets are said to be more sensitive to moisture under the conditions of use than were the original "Fomos" tablets and thus are said to be readily disintegrated to ensure full and rapid reaction with whatever moisture is present in the body cavity. Yet the tablet of the present invention is said to be sufficiently insensitive to moisture prior to its use so that the shelf life was doubled over that of the old "Fomos" tablets.

Applicant has changed the proportions of boric acid, tartartic acid and sodium bicarbonate in the original "Fomos" tablets to obtain the benefit of the water-producing reaction between the boric and tartaric acids. The water produced by this reaction together with the structure of the tablet are asserted to improve the solubility of the tablet.

The shelf life and stability of the tablet are asserted by applicant to result from the new tablet structure. Applicant separately coats each of the active ingredients of the tablet with different

binders, and separately granulates such coated ingredients. After drying they are formed into a single tablet. Applicant uses methyl cellulose as a coating for the tartaric acid, to provide a moisture barrier to isolate the tartaric acid from both the boric acid and the sodium bicarbonate. The sodium bicarbonate is coated with a foaming agent, and the boric acid is coated with a water solution of a common binder and the desired medicinal agent.

Since the rejection on the ground of public use goes to all the claims and the other issues relating to patentability of the claims become moot if that rejection is sustained, we shall first consider that ground. The board's finding that the tablets defined in the claims of the instant application were "in public use for twenty years prior to the filing date of the application," and were therefore not patentable under 35 U.S.C. § 102(b), raises an issue of fact. The precise question is whether the evidence of record supports the finding of the board that there was public use or sale of the tablet claimed in the application prior to November 18, 1952. The only evidence of record before us is found in affidavits submitted by the applicant, which affidavits were directed primarily to the issue of utility which had been raised by the examiner. We shall review these affidavits in chronological sequence.

On January 17, 1955, Reuben Posner, one of the assignees of the instant application, and president of the other assignee, Fomos Laboratories, Inc., submitted an affidavit which contained the following paragraph:

"I annex to this application a true copy of a report made by the Planned Parenthood Federation of America, Inc. I state that the formula of the Fomos tablet mentioned in this report is exactly the same as the formula of the tablet in the application."

In that report, under the heading "Statement of Background Material," is the following statement:

"The manufacturer reports that Fomos. tablets have been used by physicians in private practice for twenty years."

On January 2, 1957, Posner submitted another affidavit, annexed to which was an "Exhibit A," which appears to be the same report of the Planned Parenthood Federation of America that had been annexed to his affidavit of January 17, 1955. However, in his affidavit filed January 2, 1957, Posner stated:

"The 'Fomos' tablets mentioned in 'Exhibit A' are the tablets disclosed in this application, and are not the tablets previously manufactured under the name 'Fomos' prior to November 18, 1952."

The applicant Reese also submitted an affidavit on January 2, 1957. Reese distinguished between the "Fomos" tablets of the application and those made and sold prior to November 18, 1952, and stated that the tablet disclosed in the application never was sold in the United States of America prior to November 18, 1952. Reese also pointed out the differences between the "Fomos" tablets sold in the United States prior to November 18, 1952 and the tablets claimed in his application.

On October 3, 1957, attorneys for applicant filed an amendment in which they traversed the examiner's rejection on public use, stated that there was no such issue in the case, and explained that there are two tablets known as "Fomos" tablets, the old tablets and those of the application. An affidavit signed by Reese on September 24, 1957 was attached. In that affidavit Reese again distinguished between the old "Fomos" tablet which had been sold by Fomos Laboratories since 1934, and the "Fomos" tablet of the application, the "new" "Fomos" tablet, which had not been sold or offered for sale prior to November 18, 1952. Reese expressly traverses the examiner's finding that the "Exhibit A" statement about twenty years use by physicians referred to the "Fomos" tablets of the application.

The examiner and the board in rejecting the application as being for an invention in public use or on sale more than one year prior to the filing date of the application (35 U.S.C. § 102(b)), appear to rely mainly upon the Posner affidavit filed January 2, 1957 and "Exhibit A," attached thereto, from which it is asserted that the applicant did not show that the examiner erred in finding such public use.

■ We find no reasonable basis for the finding that there was public use of the claimed tablets prior to November 18, 1952. If Posner's affidavit and the "Exhibit A" are taken at face value, they constitute a factual contradiction, rather than an admission. It is impossible that the same tablet could have been in use for twenty years in 1954, and was never "manufactured * * * prior to November 18, 1952." Taken at face value the affidavit and "Exhibit A" seem to make these contradictory assertions. It is only by ignoring the second half of the sentence in Posner's affidavit that the Patent Office tribunals were able to construe the affidavit and "Exhibit A" as an admission of prior public use.

The brief on behalf of the Commissioner of Patents criticizes the affidavits submitted saying, "None of the affidavits includes a statement purporting to establish that the claimed tablets were not *in use* as opposed to being *sold* prior to November 18, 1952." We think this position is not warranted. The clear implication is that tablets could not be *in use* prior to their manufacture.

Even if the affidavit and exhibit could be construed as such an admission, such an admission is contra to the positive averment made by Reese in the oath accompanying the application. The evidence submitted subsequently seems to us to clearly support the position of Reese and not to support the position of the board. The board seems to have relied upon the alleged failure of the applicant to respond to the examiner's rejection, and indicates that applicant failed to state that the tablet of the application had never been *used* before November 18, 1952, and was equivocal with respect to the matter of sales prior to that date.

■ We do not find satisfactory support in the record for the board's position. The applicant repeatedly stated under oath that the tablets had not been sold prior to the critical date. There is nothing equivocal in those averments. In applicant's affidavit filed on January 2, 1957, each of the novel features relied upon is set forth and applicant stated under oath that each of them had never been used before the critical date. Again, these averments are completely unequivocal. While the board was correct in noting that applicant is an interested party, and while that interest should be taken into account in weighing the evidence, it is not enough, alone, to support a conclusion that he perjured himself in swearing there had been neither use nor sale of the improved tablets prior to the critical date.

Finding, as we do, that there never was an admission of use or sale prior to the critical date, and that the confusion created in the record by the language of "Exhibit A" was subsequently clarified, we reverse the rejection by the board based upon a finding of public use.

The other ground of rejection by the board is based on finding of obviousness of the claimed invention over the prior art. 35 U.S.C. § 103. The issue thus presented is whether the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

Claim 39 is as follows:

"39. A dry vaginal tablet which is soluble in water; said tablet consisting substantially wholly of dry granulated sodium bicarbonate which is coated with a foaming agent; and dry granulated tartaric acid which is coated with methyl cellulose which

is resistant to water vapor; and dry granulated ortho-boric acid which is intermixed with a medicinal agent in a non-toxic level of said medicinal agent; and a filler; and a wetting agent; said tablet having substantially equal ratios by dry weight of said dry granulated tartaric acid and of said dry granulated ortho-boric acid, the total weight of said dry granulated tartaric acid and of said dry granulated ortho-boric acid being substantially 52% of the weight of said tablet; the total dry weight of said granulated sodium bicarbonate and said granulated tartaric acid and said granulated ortho-boric acid being substantially 84% of the weight of said tablet."

Claim 39, while setting forth the proportion of ingredients defines the assertedly new structure of the tablet. Claim 40 is dependent upon claim 39, differing from the latter only in limiting the medicinal agent to a spermicide.

Claim 41 is as follows:

"41. A water-soluble dry vaginal tablet which consists of sodium bicarbonate, tartaric acid, ortho-boric acid, a filler, a wetting agent, and a medicinal agent in a non-toxic level of said medicinal agent; substantially 84% by weight of said tablet consisting of sodium bicarbonate, tartaric acid and ortho-boric acid; said tablet having substantially equal weights of tartaric acid and ortho-boric acid, the total weight of said tartaric acid and said ortho-boric acid being substantially 52% of the weight of said tablet."

Claim 42 is dependent on claim 41, and like it, relies for novelty on the assertedly new proportions of the ingredients.

The references relied upon to support this rejection are as follows:

Curtis      2,382,546    Aug. 14, 1945
Lebram (Br.)   11,601    Nov. 2, 1905

Gutman, Modern Drug Encyclopedia and Therapeutic Guide, N. Y. (1934) page 446.

Dickinson, Control of Conception, Williams and Wilkins Co., Baltimore, Md., 2d Ed. (1938) pages 74–75.
Lesser, Drug and Cosmetic Industry, Vol. 62, No. 6, (June 1948) pages 750–751.

The Gutman reference discloses the ingredients of the old "Fomos" tablet. However, Gutman is silent as to the proportion of the ingredients used and as to the structure of the tablet.

The Curtis patent is relied upon for showing that a greater degree of dissociation of boric acid may be achieved by adding to the mixture tartaric acid, which increases the H ion concentration of the mixture by the formation of complex, highly ionizable substances. It was concluded by the examiner and the board that Curtis taught that the reaction between boric acid and tartaric acid had long been known to increase the solubility of the two acids.

The Dickinson publication, "Control of Conception," refers to the known spermicidal effectiveness of the medicinal agents, hydroquinone and oxyquinoline sulfate, which applicant discloses. However, since applicant disclaims any reliance upon the specific spermicides used, we see no occasion to apply this reference.

The Lebram British patent issued in 1905 relates to an improvement in effervescent mineral baths. It appears from this reference to have been common practice to make mineral baths effervescent by adding a dilute, weak acid to them, and then pouring sodium bicarbonate into the solution. However, frequently the reaction was undesirably violent. Lebram sought to control the reaction by coating the bicarbonate with a water soluble gum or resin. Thus the reaction was inhibited by the film of gum or resin which had to dissolve before the reagents could come into contact.

The Lesser article describes the use of methyl cellulose as a binder for aspirin tablets. Comparative tests with other binders ranked methyl cellulose first as to sieving, compression and disintegra-

tion, equalled only by a gum Karaya mucilage. As to distintegration, methyl cellulose compared favorably with starch because it absorbed water to produce an explosive type of distintegration.

As pointed out by the board, and as shown by the record here, claims 41 and 42 cover no more than what applicant asserts to be optium quantities of each of Gutman's three principal ingredients to achieve a stated result. Since the result sought and the ingredients used were known, we agree with the board it was within the expected skills of one having ordinary skill in this art to arrive at the optimum proportion of those ingredients. The knowledge that boric acid would react with tartaric acid tells such a person that an optimum ratio exists. In view of the prior art teachings we agree with the conclusion that the proportions of ingredients would have been obvious to a person having ordinary skill in the art at the time the invention as claimed in claims 41 and 42 was made. Since the improved results alleged by applicant resulted from experimentation of an obvious nature and were nothing more than one would expect, they may not be relied upon to warrant the allowance of claims 41 and 42. "It has been repeatedly held that a patent should not be granted for an applicant's discovery of a result which would flow naturally from the teachings of the prior art." In re Tanczyn, 241 F. 2d 731, 733, 44 CCPA 764, 766.

■ Therefore, as to claims 41 and 42, which distinguish the tablet over the prior art only by the recited proportions of ingredients and the designation of a spermicidal agent, we affirm the rejection by the Board of Appeals.

Claim 39 and its dependent claim 40, differ from claims 41 and 42 in defining details of the structure of the tablet.

The board held that since the Lebram patent suggests coating the ingredients with a binder and the Lesser article suggests using methyl cellulose, that claims 39 and 40 are drawn to an obvious, hence unpatentable, composition. But we think it is clear that applicant is claiming nei-ther the use of binders, as disclosed by Lebram, nor the use of methyl cellulose as a binder. Applicant's invention as claimed in claims 39 and 40 is a tablet which results from the separate moistening of the ingredients with a foaming agent, methyl cellulose and a gum binder respectively, and in the separate granulation and drying of each of the three ingredients of the tablet in such a manner that when they are compounded in the tablet by means of an additional binder they can interact under the conditions of intended use to achieve the purpose of the tablet. The tablets have a lengthened shelf life during which the ingredients are protected from vapor and interaction so that their initial properties are preserved and rendered effective when used.

■ Lebram teaches what has been done in the old "Fomos" tablets for years, namely: to mix the dried, combined ingredients with a binder, which incidentally inhibited their desired reaction. Lesser teaches the use of methyl cellulose in place of the other binder resins suggested by Lebram. Applicant, on the other hand, has in our opinion, produced a novel combination which was unobvious to one of ordinary skill in the art. We therefore reverse the rejection of claims 39 and 40.

There remains one further matter to be disposed of. In his brief the solicitor states that applicant's assertion that "the sales of said prior 'Fomos' tablets dropped steadily" was without support in the way of business records and other evidence. Whereupon applicant moved for leave to file a memorandum and affidavit to prove decrease in the sales of old "Fomos" tablets on the ground that the solicitor had raised a new issue. The solicitor opposed the introduction of evidence which had not been before the Patent Office.

■ The solicitor's position on this point is well taken and applicant's motion is denied. No claims for the new "Fomos" tablet can be allowed on the basis of the commercial failure of the old "Fomos" tablet, and thus the addi-

tional evidence would not be pertinent to the issues here before the court.

The decision of the board is reversed as to its rejection of all claims on the ground of prior public use or sale and as to its rejection of claims 39 and 40. It is affirmed as to the rejection of claims 41 and 42 on the prior art.

Modified.