**G. J. AIGNER CO. et al., Plaintiffs,**

v.

**Edward J. BRENNER, Commissioner of Patents, Defendant.**

**Civ. A. No. 1844-67.**

United States District Court
District of Columbia.

April 1, 1969.

Phillip H. Mayer and Gerald Rose, Chicago, Ill., and William A. Smith, Jr., Washington, D. C., for plaintiffs.

Lutrelle F. Parker, Washington, D. C., for defendant.

OPINION

HOLTZOFF, District Judge.

This is an action against the Commissioner of Patents under 35 U.S. Code § 145 for an adjudication that the plaintiffs are entitled to a patent on an application which the defendant has rejected.

The application was filed on September 10th, 1964 and is numbered 401,752. The applicant was Joseph E. Kohnke and the name of the application was "Laminated Product and Method of Making Same". The invention consisted of a new type of index card, such cards as are used in libraries, offices and commercial establishments of various kinds. The specific card devised and designed by the applicant is made of a sheet of plastic, specifically a type of plastic known as mylar, the sheet of plastic being folded over and bonded together in order that the space between them may constitute a pocket or a window. The plaintiffs' principal witness described the invention as: "taking a piece of plastic and putting glue on the plastic in a pattern, folding it over, sticking it together, resulting in a pattern of pockets or windows."

Manifestly, index cards for use in cabinets of various kinds have been known for years and have been made of materials of numerous kinds and in different forms. There is no doubt that the plaintiffs' card is an ingenious contrivance and a useful article, as the evidence shows. It has had a large sale ever since it was placed on the market. This fact alone is not sufficient, however, to justify patentability.

This Court said, in General Electric Co. v. Watson, 188 F.Supp. 341, 343:

"There are, however, many valuable and important contributions to commerce and industry that do not constitute inventions or discoveries within the meaning of the patent laws because they do not involve the use of the inventive faculty but are the product of skills of other types. They may comprise assiduous experimentation by trial and error in order to determine

best proportions of known ingredients to achieve a well-known and pre-determined purpose. They may consist of harnessing or adapting a known theoretical formula to an industrial use. They may comprehend the development of an efficient technique popularly known as know-how. Such contributions are frequently much more valuable and essential than many an invention, but the law does not reward them with a patent monopoly."

We must ever bear in mind the statement of the Supreme Court made many years ago in Atlantic Works v. Brady, 107 U.S. 192, 200, 2 S.Ct. 225, 281, 27 L.Ed. 438:

> "It was never the object of those [patent] laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures."

The Court is of the opinion that the product for which the plaintiffs seek a patent falls within the class excluded by the principles that have just been summarized. The plaintiffs' card is not the product of the inventive faculty or anything else but the product of mechanical skill of a person reasonably skilled in the art. It is what would be called obvious under the terminology of the existing patent law even though it may constitute an advance on prior types of index cards.

The Court would reach this conclusion even without recourse to prior art, but the Patent Office with its usual and commendable care examined it and held that in the light of the prior art the plaintiff's device is not a patentable invention. The features claimed to be patentable consist of the fact that the card is very thin and is made for that purpose out of a material known as mylar, which is a form of plastic that is capable of being made very thin. At the same time the card is firm and therefore can stand erect. It is made of a single piece of plastic folded in the middle, sticking the two flaps together, resulting in the for-mation of a pocket or a window. It is the view of this Court that none of those features constitute anything more than the product of mechanical skill.

Turning now to the decision of the Board of Appeals of the Patent Office and to the prior art, we find the following. The principal item of prior art on which the Patent Office relied and which is almost an anticipation is the patent to Rand, No. 1,294,948, issued on February 18th, 1919, also covering an index card. In that patent the statement is made that one of the objects of the invention is the provision of a guide which is exceedingly thin and yet possesses the required stiffness and durability.

The Board of Appeals, in its Opinion, states that:

> "The Rand patent teaches what is self-evident, i. e. that index cards should be as thin as possible, consistent with requisite strength. Hence, it would be obvious to one skilled in the art to use improved materials as they become available for the index card of Rand."

The adaptation of mylar as a material out of which these cards are made is not invention. Ordinarily, the use of a new material for an old purpose or an old structure is not invention, unless, indeed, a new result is obtained. But it is not necessary to rely on this general principle. The Board of Appeals says:

> "The patent to Englestein et al. specifically teaches the use of mylar as a suitable material for file cards."

The patent to which the Board of Appeals referred is a patent to Englestein et al., issued on May 28th, 1963, No. 3,-091,046. In column 2, lines 29 to 31, we find the following statement:

> "The sheet is made of acetate, cellophane, *mylar* or any other suitable flexible transparent plastic." [Emphasis supplied.]

Consequently, the use of mylar for the purpose of manufacturing index cards was not new and was not invention.

The Board of Appeals, in its Opinion, goes on to state:

"The patent to Englestein shows a file card similar to that shown in the Englestein et al. patent. It does not disclose the use of mylar but it does disclose that the panels may be bonded together without the use of the spacer strips."

The Board might have well added that the Rand patent, to which reference has already been made, shows, among other things, a card made of a single sheet of cellulose which is doubled over to form a pocket for an index slip, the two flaps being secured together by some adhesive such as cement.

The Court concludes that the Patent Office was clearly right in rejecting the application on the ground that the subject matter was not patentable either in and of itself or because of prior art.

Accordingly, judgment will be rendered dismissing the complaint on the merits.

A transcript of this oral decision will constitute the findings of fact and conclusions of law, but either side may, if it wishes, submit supplemental proposed findings, although that is not necessary.