**Application of John F. WAYMOUTH and Frederic Koury.**

**Patent Appeal No. 9091.**

United States Court of Customs and Patent Appeals.

June 27, 1974.

James Theodosopoulos, Danvers, Mass., atty. of record, for appellants.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Fred W. Sherling, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

BALDWIN, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals sus-

taining the rejection of claims 1–13 of appellants' application.[1]

## The Invention

The invention relates to high pressure electric discharge devices, or lamps, which are commonly used for highway and outdoor area lighting. The lamp includes an arc tube which contains halogen and mercury atoms present in a specified ratio—0.08 to 0.75.

Conventional high pressure electric discharge devices characteristically emit a bluish light which does not illuminate as well as white light because of poor color rendition. When these conventional lamps are used to illuminate a red object, the object appears black, not red. Appellants have sought to achieve white light emission from their lamps and have discovered that maximum white light emission can be achieved when the claimed ratio of halogen atoms to mercury atoms is maintained. Appellants' application contains the following graph which illustrates the effect produced upon white light emission plotted against the halogen atom to mercury atom ratio.

FIG.2

Claims 1 and 10 are representative of the appealed claims:

1. In a high pressure electric discharge device having an arc tube with electrodes sealed at each end thereof and having means to convey electrical energy to each of said electrodes and having atoms of mercury, atoms of a halogen selected from the group consisting of iodine, bromine and chlorine and atoms of a metal capable of reacting with halogen, the improvement which comprises: said halogen and mercury being contained in said arc tube in a ratio of halogen atoms to mercury atoms between about 0.08 to 0.75, the visible emission of said arc tube when an arc is formed therein being a substantially complete forest of spectral lines in the emission spectrum, appearing at spacings less than about 5A apart.

10. A high pressure electric discharge device having an arc tube with electrodes sealed at each end thereof and having means to convey electrical energy to each of said electrodes and having atoms of mercury, atoms of a

1. Serial No. 810,490, filed March 26, 1969.

halogen selected from the group consisting of iodine, bromine and chlorine and atoms of a metal capable of reacting with halogen, the improvement which comprises; said halogen and mercury being contained in said arc tube in a ratio of halogen atoms to mercury atoms between about 0.08 to 0.75, the amount of mercury within said arc tube being such as to be completely vaporized at temperatures attained within said arc tube between 450 and 700°C when a pressure in excess of one half atmosphere is attained, the visible emission of said arc tube when an arc is formed therein being a substantially complete forest of spectral lines in the emission spectrum, appearing at spacings less than about 5A apart.

The other appealed claims depend either directly or indirectly from claims 1 or 10 and need not be further discussed, in view of our disposition of claims 1 and 10.

### The Reference

The Reiling patent [2] discloses a device similar to that of appellants' and also seeks to produce white light. The Reiling device incorporates the halogen and mercury atoms used by the appellants; however, the claimed ratio is not specifically disclosed in the reference. Appellants have calculated the ratios of halogen to mercury atoms inherently disclosed by Reiling, which ratios span the range from 0.0000001 to 1.3. These ratios have not been contradicted by the board or the solicitor.

The only disclosures in Reiling relevant to any halogen atom to mercury atom ratio, all state that a quantity of excess halogen should be present and that "the mercury present be in a relatively small quantity." Other pertinent disclosures in Reiling relate to the various metallic halides—including not only various metallic iodides, but also their bromides and chlorides—which may be utilized and that "an unexpectedly much

greater increase in efficiency and improved color characteristics . . . is obtained when certain combinations of iodides are used." Reiling further states: "The ultimate parameters upon which operation of the invention depend are the vapor density within the envelope, the arc temperature, and the internal envelope wall temperature."

### The Rejection

The examiner had rejected claims 1–13 under the provisions of 35 U.S.C. § 103 as being obvious in view of the Reiling patent. The examiner stated that "although the exact ratio . . . is not specifically disclosed in the Reiling patent, the ratio would, at best, appear a matter of routine experimentation . . . . " and "it is within the ordinary skill of the art to arrive at the optimum proportion of ingredients through obvious experimentation", citing In re Reese, 290 F.2d 839, 48 CCPA 1015 (1961). The examiner further contended that appellants' claimed ratio was "a matter of optimization and not a matter of criticality", since the claimed ratio would only be "deemed critical if, and only if, the lamp will not operate outside of [the] specified range" and appellants' lamp does operate outside the claimed range.

The board sustained the rejection for the reasons advanced by the examiner and for their own additional reasons. The board stated:

We observe, referring to the graph shown in Fig. 2 of appellants' drawings, that appellants chose 0.5, i. e., the fifty per cent point on the vertical axis of their graph to limit the range of the ratio of halogen atoms to mercury atoms claimed. It appears to us that it is an obvious matter of choice as to what portion of the range taught by Reiling, appellants choose for measuring the range over which the white light is intensified. Since appellants and the Reiling patent teach the use of the same materials in their

---

2. Patent No. 3,234,421, issued February 8, 1966.

respective lamps to produce white light, we find that it would be obvious to a person with ordinary skill in the art with Reiling before him to so choose ratios of halogen atoms to mercury atoms to optimize the production of white light. We do not view appellants' graphical representation of a ratio range determined by a 50 per cent intensity of white light emission to establish an unexpected result, particularly since appellants' curve is a smooth continum [sic] and extends over a range of halogen to mercury atoms greater than claimed.

## OPINION

■ We cannot agree with the board that appellants' claimed ratio was the result of obvious experimentation, since, in our judgment, any such experimentation would not have come from *within the teachings of the art.* In re Fay, 347 F. 2d 597, 52 CCPA 1483 (1965). In determining whether or not such experimentation is within the teachings of the art, we "must be ever alert not to read obviousness into an invention on the basis of the [appellants'] own statements; that is, we must view the prior art without reading into that art [appellants'] teachings." In re Sponnoble, 405 F.2d 578, 56 CCPA 823 (1969).

In so viewing the reference, we find that the only experimentation for achieving better white light emission that Reiling suggests to one skilled in the art would be to either select and balance the effects of various metallic halides or to vary Reiling's "ultimate parameters" of vapor density, arc temperature, or internal envelope wall temperature. Furthermore, we believe that the relevant teachings of Reiling, relating to the use of an excess quantity of halogen and a small quantity of mercury, would definitely lead one of ordinary skill in the art away from appellants' claimed ratio.

We further agree with appellants' claim that their ratio is critical for attainment of maximum white light emission. Appellants' specification does not describe the ratio as merely preferred, but rather in terms stating that the ratio "must be obtained." In re Shepard, 319 F.2d 194, 50 CCPA 1439 (1963). It should suffice to point out that we can find no support for the proposition of law, as set forth by the examiner and affirmed by the board, which would require inoperativeness of a device when operating over a different range from that claimed, in order to support a finding of criticality for that claimed range.

■ Although Reiling's range of possible ratios envelops the range claimed by appellants, we believe that the appellants' graph in Figure 2 demonstrates the necessary unexpected results. Those results follow from the selection of appellants' critical range, which is narrower than the extremely broad inherently disclosed range of Reiling. In re Reven, 390 F.2d 997, 55 CCPA 934 (1968). We cannot agree with the board's holding that since appellants' lamp is also operable over other ranges of the halogen atom to mercury atom ratio, Figure 2 does not demonstrate an unexpected result. In order to show an unexpected result, we do not believe that the lamp must be inoperable over other ranges, but rather that over the claimed critical range, there be a difference in kind, rather than in degree. In re Shepard, *supra.* We believe that Figure 2 demonstrates such a marked improvement, over the results achieved under other ratios, as to be classified as a difference in kind, rather than one of degree.

Furthermore, the board in discussing the results in Figure 2 appears to have completely ignored the fact that it is appellants, not Reiling, who have discovered that any relationship exists at all between the halogen atom to mercury atom ratio and the intensity of white light emission. See In re Sponnoble, *supra,* and In re Huitt, 375 F.2d 484, 54 CCPA 1417 (1967) (dissenting opinion).

For the foregoing reasons, the decision of the board is reversed.

Reversed.

MILLER, Judge (dissenting).

Although Reiling does not teach *the* claimed ratio, he does teach that, in achieving his object of a highly efficient arc lamp producing white or near white emission, *a* ratio exists between the amount of mercury and the amount of metallic halide. Thus:

Charge 6 contains a sufficient amount of mercury so that when the mercury is entirely vaporized during the operation of the arc lamp, it provides a pressure in excess of one atmosphere and normally from in excess of one to approximately 15 atmospheres of mercury within the enclosure of envelope 2. This results in the characteristic radiation spectrum of mercury. Charge 6 also contains an amount of a metallic halide salt sufficient so that when the mercury is entirely vaporized and the coldest portion of the interior wall of envelope 2 is at a temperature in excess of approximately 600°C., an effective amount of the metallic halide is vaporized and remains in the vapor state. The amount of halide in the vapor state which is effective is that which is sufficient to constitute within envelope 2 a partial pressure of approximately $10-^3$ to $10^3$ mm. of Hg pressure of vaporized halide, although in order to obtain maximum efficiency I have found it desirable that the partial pressure of the halide be from 1 to 200 mm. of mercury pressure. These amounts vary, depending upon the vapor pressure of the halide chosen.

Moreover, Reiling does *not* teach away from the claimed ratio. He teaches the use of mercury and mercury halides; and the "excess" halogen taught relates to the excess amount of metallic halide over that which will actually be vaporized at the lamp operating temperatures under an indicated pressure—not an excess of halogen over mercury, as the majority seems to infer. Indeed, he teaches that the mercury present be in a relatively small quantity so that all of the mercury is vaporized.

The majority agrees with appellants' claim that their halogen-mercury ratios are "critical." However, as shown in Figure 2, the range of such ratios is somewhat broad at the arbitrarily-selected intensity of 0.5 (doubtless to respond to the commercial realities of product control). Contrary to the majority's description of Reiling's range as "extremely broad," it should be pointed out that said range does not exceed 1.3 and that over fifty per cent of this range is claimed by appellants. The smooth continuum represented by the curve contradicts the majority's conclusion that appellants' invention produces a difference in kind (unexpected results) rather than degree.

I agree with the board that it would be obvious to a person of ordinary skill in the art with Reiling before him to optimize the intensity of white light emission by choosing from among ratios between halogen atoms and mercury atoms.

I would affirm.