**Application of George I. GOODWIN, John L. Margrave and Robert E. Wagner.**

**Appeal No. 77–596.**

United States Court of Customs and Patent Appeals.

May 18, 1978.

Robert E. Wagner, Gerald T. Shekleton, Wagner & Aubel, Chicago, Ill., attorneys of record, for appellants.

Joseph F. Nakamura, Washington, D. C., for Commissioner of Patents, Gerald H. Bjorge, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

This appeal is from the decision of the Patent and Trademark Office (PTO) Board of Appeals (board) affirming the rejection of claims 2–4, 14–20, 22 and 23 under 35 U.S.C. § 103, and claims 21–23 under 35 U.S.C. § 112, second paragraph, and, under the provision of 37 CFR 1.196(b), rejecting claims 1 and 21 under 35 U.S.C. § 103 in application serial No. 341,841 for "Mold Lubricant and Method" filed March 16, 1973. We reverse.

### The Invention

The invention is an improved mold lubricant and method involving application thereof to molds used in glass manufacture. Claims 1, 14, and 21 are illustrative of claims 1–4, 14–20, and 21–23, respectively, the others being dependent therefrom.

1. In the method of manufacturing glass by shaping a molten gob of glass into a shape conforming to the shape of a cavity in a mold, said mold being formed of metal or the like, the improvement comprising coating said mold cavity which contacts said molten gob of glass during shaping with carbon monofluoride to provide relatively permanent lubrication.

14. The method of lubricating a mold for use in glass manufacturing, said mold being formed of metal or the like and having a cavity formed with recessed surfaces and being adapted for use in shaping a molten gob of glass into a desired shape-sustaining configuration, said method comprising cleaning said surfaces of said cavity of said mold, applying carbon monofluoride to said surfaces of said cavity, and heating said mold to a temperature of about 700°F.

21. In the manufacturing of glass wherein a gob of molten glass falls through a chute into a mold formed of metal or the like, said mold being adapted for shaping said gob into a glass object, the improvement which comprises coating surfaces on said mold coming into contact with said molten glass with a stoichiometric composition known as $(CF_x)_n$ to provide permanent lubrication.

### The References

The references relied on are:

| Barkhau | 3,347,650 | Oct. 17, 1967 |
| Katzer et al. (Katzer) | 3,510,337 | May 5, 1970 |
| Margrave et al. (Margrave) | 3,674,432 | July 4, 1972 (filed Oct. 20, 1969) |
| Kohler (Germany) | 1,074,795 | Feb. 4, 1960 |

### The § 103 Rejection

All claims rejected by the board under 35 U.S.C. § 103 were found unpatentable over the combined disclosures of Barkhau and Margrave. Barkhau teaches using various lead compounds in a method of lubricating metal glassware molds that contact molten glass having a temperature of approximately 871°–927°C. Margrave discloses carbon monofluorides useful as solid lubricants and stable in oxidizing atmospheres at temperatures up to 800°C. With little elaboration, the board concluded that it would have been obvious to employ Margrave's carbon monofluorides as lubricants in Barkhau's glass manufacturing processes. On reconsideration, the board reiterated Margrave's teaching that his stable carbon monofluorides permitted use to the fullest extent of their stability in oxidizing atmospheres at temperatures as high as 800°C. The board considered that "such disclosures would have suggested the use of those compounds as lubricants in glass manufacturing processes."

### The § 112 Rejection

The examiner rejected claims 21–23, which set forth the lubricant $(CF_x)_n$, as indefinite for not properly limiting the unknown "x." The examiner noted that in their specification appellants have stated the fluorine to carbon ratio of 0.99–1.12/1.00 as that of only the preferred form of the invention, and have nowhere set an upper limit of x. Thus, he contended that because the specification does not define an upper limit of x, there is no basis for interpreting $(CF_x)_n$ in the light of the specification to be limited as appellants ar-

gue. The board sustained the rejection on the same grounds.

## OPINION

Regarding the § 103 rejection, we find no evidence to support the PTO position that because Margrave discloses superstoichiometric carbon monofluorides to be stable and effective lubricants at temperatures up to 800°C., those compounds (and other carbon monofluorides taught to be less stable) would be reasonably expected to be successful mold lubricants in the glass-forming art requiring temperatures of 871°–927°C., as taught by Barkhau, or 982°–1204°C., as disclosed in appellants' specification. The explicit teaching in Barkhau is that "the lubricant which is employed for coating glass molds and glass making equipment must be stable up to at least 1600°F. [871°C.]." The PTO has shown no evidence to overcome appellants' argument that "on a fair reading of MARGRAVE et al. there is no suggestion of the use of carbon monofluoride at a temperature in excess of 800°C. and particularly not those temperatures of use taught in the disclosure of the subject application, i. e., 982°–1204°C."

The solicitor argues that claims 1–4 require only "relatively permanent lubrication," which the skilled artisan would have every reason to believe carbon monofluoride would provide. Alleged support is drawn from appellants' specification indicating that "should any decomposition occur," it will result in a colorless, odorless, non-toxic gas. The solicitor contends that, accordingly, decomposition is to be expected, which, consistent with the claim language, supra, we are to believe is sufficient to render obvious the use in glass molding of Margrave's carbon monofluorides. It is clear to us that appellants, in discussing possible decomposition, have merely anticipated the *un*expected in the use of their lubricants that might, *on occasion, occur to some de minimis* extent. Moreover, the words "relatively permanent" appear unrelated to sporadic decomposition, but rather refer to normal wear under operating conditions. Interpreting "relatively permanent" in the light of the specification, we conclude that use of that term fails to substantiate the solicitor's case for obviousness.

The solicitor further contends that claims 14–20 are unaffected by the temperature limitation in Margrave's patent because those claims are directed to a method of lubricating a mold with a "conventional lubricant in conventional manner." Appellants' reply is well taken. It is the use of carbon monofluoride in glass mold lubricating that is unconventional.

The situation in *In re Neugebauer*, 330 F.2d 353, 51 CCPA 1138, 141 USPQ 205 (1964), cited by the solicitor, is distinguishable. In considering the limitation "electrically conductive support layer," this court concluded that the applicants had employed chiefly paper sheets of no special type—and as used by the prior art—and had pretreated them in a conventional manner. In their brief and disclosure, applicants had indicated no peculiarity in the paper to distinguish it from that used in the prior art. That is not the case here. Appellants have clearly indicated the unconventionality of using carbon monofluorides in the glass-mold lubricating technology. While the prior art teaches use of the compounds as lubricants with characteristics that are valuable to appellants, it also teaches their use below temperatures necessarily used in appellants' technology.

At best, the PTO has shown evidence that it would have been obvious to the skilled artisan to try Margrave's carbon monofluorides. However, this court has consistently refused to recognize "obvious to try" rejections. "As we have said many times, *obvious to try is not the standard of* 35 USC 103. *In re Tomlinson*, 363 F.2d 928, 53 CCPA 1421, 150 USPQ 623 (1966). *Disregard for the unobviousness of the results of 'obvious to try' experiments disregards the 'invention as a whole' concept of § 103 * * *." In re Antonie*, 559 F.2d 618, 620, 195 USPQ 6, 8 (Cust. & Pat.App.1977) (emphasis in original).

Accordingly, we reverse the decision of the board rejecting claims 1–4, 14–20, and 21–23 under 35 U.S.C. § 103.

Respecting the rejection of claims 21–23 as indefinite under § 112, second paragraph, we disagree with the PTO. Despite the undefined subscripts in the term $(CF_x)_n$, when we read these claims in light of the specification, as we must, we are constrained to accept appellants' contention that the aforementioned term, as employed in their application, is synonymous with carbon monofluoride, which the board described as "a known material of known properties." Notwithstanding appellants have used the claim terminology "known as $(CF_x)_n$," and have nonetheless utterly failed to provide evidence of knowledge in the art, we find enough, though by no means overwhelming, support in the specification to conclude that one skilled in the art would be apprised of a reasonable degree of particularity and distinctness.

Specifically, in their abstract appellants refer to the lubricant of the invention as "carbon monofluoride $(CF_x)_n$," and subsequently, in the description, identify the lubricant as "graphite fluoride $(CF_x)_n$." Moreover, in his Answer before the board, the examiner stated that "carbon monofluoride is a graphite fluoride, and it has been called graphite fluoride by the art— $(CF)_h$ [sic, $_n$]."

Though the questioned term is used synonymously with both carbon monofluoride and graphite fluoride, resort to the incorporated Margrave patent* (Margrave being a co-inventor on the application before us) resolves any ambiguity. There, the term "carbon" is used to describe the general class of materials—of which graphite is preferred—that can be reacted with fluorine to form carbon monofluorides. Graphite is merely the carbon form most prominently exhibiting layers of carbon atoms in hexagonal arrangement; hence, the term carbon monofluoride is generic and encompasses graphite fluoride. Thus, if the chemical formula $(CF_x)_n$ is synonymous with carbon

monofluorides, as we find it to be, it is correctly used to identify any carbon monofluoride, including graphite fluoride.

■ We conclude that appellants have properly complied with the § 112 requirement for precision and definiteness of claim language, and reverse the decision of the board rejecting claims 21–23 under the second paragraph of § 112.

In summary, we reverse the decision of the board as to the § 103 rejections of claims 1–4, 14–20, and 21–23, and reverse the decision of the board as to the § 112 rejection of claims 21–23.

*REVERSED.*

MILLER, Judge, concurring.

I agree with the majority's analysis and treatment of the section 103 rejection; however, I am in some disagreement with its analysis of the indefiniteness rejection under section 112, second paragraph.

The PTO has conceded that the term "carbon monofluoride," which is used in claims 1–4 and 14–20, is definite. The majority properly finds that "the term $(CF_x)_n$ . . . is synonymous with carbon monofluoride." However, it then unnecessarily and confusingly injects a discussion of the term "graphite fluoride." Appellants, in their specification, have used the terms "carbon monofluoride" and "$(CF_x)_n$," interchangeably to designate the same chemical compound.[1] Accordingly, no further discussion of the definiteness of the term "$(CF_x)_n$" is needed.

The majority analyzes the specification and the Margrave reference and incorrectly concludes that "the term carbon monofluoride is generic and encompasses graphite fluoride." Only once does the specification use the term "graphite fluoride," and then in a manner indicating that graphite fluoride is generic to carbon monofluoride:

* U.S. Patent No. 3,674,432, issued July 4, 1972, on application serial No. 867,678, filed Oct. 20, 1969.

1. *E. g.*, "In the preferred form [of $(CF_x)_n$], the fluorine to carbon ratio is greater than 0.99/1.00 or 1.12/1.00"; "Better results were

obtained with carbon monofluoride having a ratio of above 0.99/1.00 and preferably in the range of about 1.12/1.00"; "The lubricant is carbon monofluoride $(CF_x)_n$ wherein 'x' is about 0.7 or, preferably, above 1.00."

The lubricant of the present invention *may be described* as graphite fluoride $(CF_x)_n$. *In the preferred form*, it is a stable carbon monofluoride having a maximum super stoichiometric fluorine to carbon ratio prepared by the method . . . [of the Margrave reference]. [Emphasis added.]

Such characterization by the specification is consistent with the examiner's statement that "carbon monofluoride is a graphite fluoride." The Margrave reference never uses the term "graphite fluoride" and merely states that carbon monofluoride can be made from "graphite, or those forms of carbon having some graphitic structural characteristics."