**In re Francis J.A.M.C. DE BLAUWE
and Frank K.A. Selleslags.**

**Appeal No. 84–513.**

United States Court of Appeals,
Federal Circuit.

June 8, 1984.

Jeffrey G. Sheldon, Pasadena, Cal., argued for appellants.

John F. Pitrelli, Arlington, Va., argued for appellee. With him on the brief were Joseph F. Nakamura, Sol., and John W. Dewhirst, Associate Sol., Washington, D.C.

Before BENNETT, Circuit Judge, SKELTON, Senior Circuit Judge, and MILLER, Circuit Judge.

JACK R. MILLER, Circuit Judge.

This appeal is from that part of the decision of the United States Patent and Trademark Office ("PTO") Board of Appeals ("board") which affirms the examiner's rejection of appellants' claims[1] 42–53 and 55–64 under 35 U.S.C. § 103. We reverse in part, vacate in part, and remand.

## THE INVENTION

Appellants' claims are drawn to heat shrinkable (or recoverable) articles and methods of utilizing these articles. Heat shrinkable articles, which are well known in the art, are often shaped as a hollow tube, having two open ends, or a hollow cap, having an open end and a closed end. They are used as protective coatings for pipes, electrical cables, and telephone cables by positioning the heat shrinkable article over the pipe or cable and then applying heat to shrink the article into contact with the pipe or cable. The following polymeric materials are useful in manufacturing heat shrinkable articles: polyolefins, copolymers of ethylene and vinyl acetate, copolymers of ethylene and ethyl acrylate, chlorinated or fluorinated polymers; also, ethylene-propylene, or chlorinated, or silicone rubber.

Heat shrinkable articles are typically made by the following process: (1) melt-shaping a polymeric material into an article having an original shape, (2) cross-linking the shaped article, (3) heating the cross-linked article above the melting temperature of the polymeric material, (4) expanding the heated article into a new shape, and (5) cooling the article while maintaining its expanded new shape. When an article made by this method is heated above the melting point of the polymeric material, it shrinks back to its original shape. The extent of expansion during step (4) of the above process is indicated by the expansion ratio of a dimension (often diameter) after expansion to the same dimension before expansion (i.e. when the article had its original shape).

One problem encountered in prior heat shrinkable articles is their tendency to split during expansion or shrinkage if the article has a high expansion ratio. Splitting usually occurs at the open end(s) of such articles and is especially acute if the article has a nick or notch which tends to propagate during shrinkage. Appellants state that, although the expansion ratio at which split-

---

1. In application serial No. 071,762, filed August 31, 1979, for: "Heat-recoverable Article [sic, Articles]," which is a continuation of serial No. 849,214, filed November 7, 1977, and now abandoned.

ting occurs depends on the type of polymer utilized, there is rarely a problem with expansion ratios below 2.5 and usually ratios up to 3.0 can be safely used. However, they indicate that splitting becomes a problem with expansion ratios of 3.5 or higher.

Appellants have discovered that splitting is avoided, even when high expansion ratios are utilized, if the article is provided with open end sections having relatively low expansion ratios. Figure 1 shows an example of a tube-shaped heat shrinkable article in accordance with appellants' invention.

FIG. 1

The solid lines show the article's shape before heat shrinkage, while the dotted lines depict the article's configuration after heat shrinkage. The article assumes an hour glass shape after heat shrinkage because intermediate section 10 has a higher expansion ratio than end sections 12. Likewise, when appellants' articles are in the form of an end cap, as shown in Fig. 2 below, the hour glass shape depicted by the dotted lines results after heat shrinkage, because intermediate section 16 has a higher expansion ratio than open end section 18 and closed end section 20.

FIG. 2

2. Figures 1, 2, and 3 are not part of appellants' application but were included in appellants'

Element 24 in Fig. 2 is a gripping protuberance by which end section 20 of the end cap can be grasped when it is in the interior of conduit 22, as shown below in Fig. 3, to permit this section to be pulled out of the conduit's interior.[2]

FIG. 3

The following claims are illustrative:

42. A hollow heat-shrinkable article composed of a polymeric material and having a closed cross-section and at least one open end, each open end being defined by an open end section having adjacent thereto an intermediate section, the open end section having a first expansion ratio which is from 1 to 3.0 and the intermediate section having a second expansion ratio which is at least 3.0 and at least 0.5 greater than said first expansion ratio, whereby the amount of available recovery in the open end section is substantially less than the amount of available recovery in the intermediate section, the circumference of the open end section after unrestrained recovery of the article being substantially greater than the circumference of the intermediate section.

55. [Rewritten in independent form for purposes of this appeal] A method of covering a part of an elongate substrate which comprises the steps of:

(a) placing around said part of the substrate at least part of a hollow heat-shrinkable article composed of a polymeric material and having at least one open end, each open end being defined by an open end section having adjacent

brief for purposes of illustration.

thereto an intermediate section, the open end section having a first expansion ratio which is from 1.0 to 3.0 and the intermediate section comprising a region having a second expansion ratio which is at least 3.0 and at least 0.5 greater than said first expansion ratio, whereby the amount of available recovery in the open end section is substantially less than the amount of available recovery in the intermediate section adjacent thereto, at least an open end section and an adjacent intermediate section of the article being placed around the substrate; and

(b) heating said open end section and said intermediate section of said article to cause shrinkage of said intermediate section into contact with the substrate and to cause shrinkage of said open end section to form a collar which flares out of contact with the substrate.

59. A method of providing an end cap on a hollow conduit which comprises the steps of:

(a) placing around the end of the hollow conduit the open end section only of a heat-shrinkable tubular cap comprising an open end section defining the open end of the cap and having a first expansion ratio, an intermediate section adjacent said open end section and having a second expansion ratio and a closed end section having a third expansion ratio, the second expansion ratio being greater than the first and third expansion ratios; and

(b) heating said open end section to cause shrinkage thereof into contact with the conduit without causing substantial shrinkage of the remainder of the cap.

Claims 52 and 61, which indirectly depend from claims 42 and 59, respectively, require that the article have "a gripping protuberance on the outside of the closed end section."[3] Claim 60, which depends from claim 59, calls for the further step of pushing the end cap along its axis so that the closed end and intermediate sections are telescoped through the open end section into the interior of the hollow conduit where they remain during heating (see Fig. 3 supra). The other claims before us are also dependent claims, which further limit the values of the expansion ratios, specify the article's dimensions, describe the material from which the article is made, specify the number of open and closed ends in the article, or set forth further steps for utilizing the end cap.

### THE PRIOR ART

United States patent No. 3,526,683 to Heslop et al. ("Heslop") discloses a method of forming a heat recoverable article having different degrees of heat recovery at different parts of the article by a process similar to that taught by appellants. Heslop's articles are particularly useful as sleeves for parts with irregular dimensions such as an insulator for a splice between different size wires, where the article undergoes heat recovery to conform to the shape of the part. In one embodiment of Heslop, a tubular article is cross-linked at an intermediate section thereof, heated, expanded in diameter to the shape shown in Fig. 4 below, and then heat recovered to the shape depicted in Fig. 5 below.

*FIG. 4.*

*FIG. 5.*

Heslop's example I indicates that tubular articles, like that of Fig. 4, can have open

---

**3.** Claim 52 depends directly from claim 49 which provides an antecedent basis for "the

closed end section."

end sections with expansion ratios of 3.33, and an intermediate section with an expansion ratio of 1.9.

United States patent No. 3,847,183 to Meyer discloses heat recoverable closures for protecting cables from moisture penetration. The ends of the cables are protected by end caps having an open end and a closed end, while cables spliced together are encased in a cylindrical sleeve having two open ends.

United States patent No. 3,992,570 to Beinhaur discloses a rubber end cap which is placed over the end of a cable by axially aligning the closed end of the cap and the end of the cable and forcing the remainder of the cap over the closed end and over the exterior of the cable so that the cap is turned inside out.

## BOARD OPINION

The board affirmed the examiner's rejection of claims 35–40 and 42–67 [4] under 35 U.S.C. § 103 stating:

> [I]t is evident from Heslop that hollow heat-shrinkable articles having variant sections of independent and different heat-shrinkability are known so that they may be used as a sleeve to encapsulate various irregularly shaped forms. The fact that in the specific embodiments of Heslop the expansion ratios of the open and intermediate sections are in reverse order than [sic, from] those claimed is not seen to distract from its value as a reference to suggest the instantly claimed invention. It clearly would be apparent to the average routineer in this field that either the end or intermediate sections could be made to have a greater or smaller expansion ratio, respectively, depending on a particular application to which the article is to be put.

As to appellants' argument that their articles do not split, the board concluded:

> Only the obvious result is achieved by appellant [sic, appellants] by selecting an expansion ratio of the open end to be

smaller than the expansion ratio of the intermediate section.

> . . . .

> ... Although the reason for appellants' modification finds no response in the art, nevertheless, the art is suggestive of the claimed variations and, accordingly, no patentable distinctiveness can lie on this basis ....

The board also concluded that the teachings of Meyer and Beinhaur would have been properly combinable with those of Heslop to provide Heslop's article with a closed end section and to telescopically insert a cable sealing device, respectively.

## ANALYSIS

At the outset, we caution the Solicitor that obviousness is a question of law to be determined from the facts. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1535, 218 USPQ 871, 876 (Fed.Cir.1983); *Stevenson v. International Trade Commission*, 612 F.2d 546, 549, 204 USPQ 276, 279 (CCPA 1979); *In re May*, 574 F.2d 1082, 1089, 197 USPQ 601, 606–07 (CCPA 1978). A conclusion of obviousness is not reviewed under the clearly erroneous standard, which is applicable to fact findings. *See Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 220 USPQ 592 (Fed.Cir.1983). Rather, such a conclusion is reviewed for correctness or error as a matter of law. *In re Carleton*, 599 F.2d 1021, 1024 n. 14, 202 USPQ 165, 169 n. 14 (CCPA 1979).

### 1. *Prima Facie Obviousness*

With respect to claims 42–48, we agree with the board that it would have been prima facie obvious to reverse the order of the expansion ratios in Heslop's article so that it would have an hour glass shape after heat recovery. Although the heat shrinkable articles in Figs. 4 and 5 of Heslop has an arrangement of expansion

**4.** Appellants do not appeal the board's decision sustaining the examiner's rejection of claims 35–40, 54, and 65–67.

ratios opposite to that of appellants' article, Heslop teaches the broad concept of producing heat shrinkable articles with portions having different expansion ratios so that the articles conform to parts with irregular dimensions after heat recovery. When a portion of the part to be covered has a smaller diameter than that of its surrounding portions, which are also to be covered, we are satisfied that it would have been prima facie obvious to one of ordinary skill in the art, from the teachings of Heslop, to utilize a heat shrinkable article with expansion ratios permitting its recovery to an hour glass shape.

We also agree with the board that it would have been prima facie obvious to close one end of Heslop's heat shrinkable articles to form an end cap, as specified by claims 49–51 and 53. It is well known to make heat shrinkable articles in the shape of end caps rather than tubes when sealing the end of a single wire rather than two spliced wires, as taught by Meyer. However, as admitted by the Solicitor at oral argument, the combination of Heslop and Meyer fails to suggest providing a gripping protuberance on the outside of the closed end, and, therefore, the board's decision with respect to claim 52 is erroneous as a matter of law.

We agree with appellants that the references would have failed to suggest to one of ordinary skill in the art the steps of: heating to form a collar at the open end section which flares out of contact with the part being covered (claim 55) and heating the open end section of an end cap to cause shrinkage of the open end section without shrinking the remainder of the cap (claim 59). Accordingly, the board's approval of the rejection of these independent claims, along with their dependent claims 56–58 and 60–64, respectively, is erroneous as a matter of law.[5]

## 2. *Unexpected Results*

Appellants argue that, even if the PTO established a prima facie case of obviousness, it has been rebutted, because the claimed invention unexpectedly overcomes the splitting problem discussed supra. Also, they point out that the prior art of record does not suggest avoiding the splitting problem by utilizing appellants' technique.

In response to appellants' assertions of unexpected results, the Solicitor states in his brief: "There is no *objective evidence* in the record that 'no splitting' is, in fact, a result of their claimed invention, much less that it is unexpected."

In their reply brief, appellants argue that their assertions of unexpected results *are* supported by objective evidence. Specifically, appellants rely on the following passages in their specification:

On the other hand, in order fully to utilise the advantages of the present invention, the second region generally exhibits a high degree of available recovery. The expansion ratios which will, in the absence of end sections as required by the present invention[,] lead to splitting on shrinkage are dependent *inter alia* on the polymer employed and the thickness. There is seldom a problem with expansion ratios below 2.5, and usually expansion ratios of up to 3.0 can safely be used. However, at expansion ratios of 3.5 or higher splitting is usually a problem and this applies more so at ratios of 4.0, 4.5 and 5.0. Thus the present invention is especially applicable at ratios of from 4 to 6 and above, for example up to 10, i.e. where the amount of available recovery is from 400% to 1000%, usually from 400% to 600%, especially when the percentage of unresolved recovery after shrinkage is high.

    . . . .

. . . Typical dimensions, in inches, of three such end caps are as follows:

**5.** In view of our decision to reverse the PTO's rejection of claim 60, we need not decide whether Beinhaur meets the limitations of claim 60. Although our reversal of the board's affirmance

of the rejection of claim 59 also makes further consideration of claim 61 unnecessary, we note that claim 61 is also patentable, because, like

| Cap No. | Intermediate Section Diameter After Shrinkage (a) | Cap Diameter Before Shrinkage (b) | End Section Diameter After Shrinkage (d) | End Section Expansion Ratio [1] | Intermediate Section Expansion Ratio [2] |
|---|---|---|---|---|---|
| 1 | 0.8 | 4.0 | 2.8 | 1.4 | 5 |
| 2 | 1.5 | 6.0 | 3.5 | 1.7 | 4 |
| 3 | 2.5 | 8.0 | 4.5 | 1.8 | 3.2 |

(1) $b \div d$; claim 42 range is 1 to 3
(2) $a \div d$; claim 42 range is greater than 3 [6]

---

It is appellants' position that the combination of these passages constitutes objective evidence that the splitting problem exists and that the claimed invention overcomes this problem. We disagree.

■ It is well settled that unexpected results must be established by factual evidence. Mere argument or conclusory statements in the specification does not suffice. *In re Lindner,* 457 F.2d 506, 508, 173 USPQ 356, 358 (CCPA 1972). Here, appellants' table of "[t]ypical dimensions" is devoid of any data from which we can determine whether or not the end caps described therein actually split. In essence, appellants ask us to *assume* that the end caps in this table are nonsplitting, because a preceding passage in the specification concludes that no splitting occurs in such articles. Examples requiring such assumptions can hardly be considered factual evidence.

■ Even if the specification contained objective evidence showing that appellants' heat shrinkable articles do not split, such evidence would not be a satisfactory showing of unexpected results. When an article is said to achieve unexpected (i.e.

superior) results, those results must logically be shown as superior *compared* to the results achieved with other articles. *In re Swentzel,* 219 F.2d 216, 220, 104 USPQ 343, 346 (CCPA 1955). *See also In re Palmer,* 451 F.2d 1100, 1102, 172 USPQ 126, 128 (CCPA 1971). Moreover, an applicant relying on comparative tests to rebut a prima facie case of obviousness must compare his claimed invention to the closest prior art. *In re Merchant,* 575 F.2d 865, 869, 197 USPQ 785, 788 (CCPA 1978). Here, appellants have not presented any experimental data showing that prior heat shrinkable articles split. Due to the absence of tests comparing appellants' heat shrinkable articles with those of the closest prior art, we conclude that appellants' assertions of unexpected results constitute mere argument and conclusory statements in the specification which cannot establish patentability. *Lindner, supra; In re Wood,* 582 F.2d 638, 642, 199 USPQ 137, 140 (CCPA 1978).

■ Appellants complain, however, that the PTO challenges their assertions of unexpected results for the first time in the Solicitor's brief.[7] They contend that, if we are persuaded by the PTO's position, prose-

---

claim 52, it provides for a gripping protuberance.

6. The table in the specification differs from that shown above in that the latter sets forth expansion ratios and contains some explanatory information not included in the former, while the former includes additional dimensions not set forth in the latter.

7. It is true that the Solicitor cannot raise a new ground of rejection or apply a new rationale to support a rejection in appeals from decisions of the board. *In re Strahilevitz,* 668 F.2d 1229, 212 USPQ 561 (CCPA 1982). However, we cannot ignore the substance of the Solicitor's arguments and reverse the board in the face of a prima facie case of obviousness unrebutted by objective evidence. At the same time, an af-

cution should be reopened so that affidavits showing unexpected results can be filed.

 It is elementary that the claimed invention must be considered as a *whole* in deciding the question of obviousness. *In re Kaslow,* 707 F.2d 1366, 217 USPQ 1089 (Fed.Cir.1983); *Stratoflex,* 713 F.2d at 1537, 218 USPQ at 877. Although the board and the examiner correctly concluded that the invention of claims 42–51 and 53 would have been prima facie obvious, this conclusion did not properly end consideration of the obviousness question; evidence arising out of secondary considerations must always be considered. *Stratoflex, supra; In re Sernaker,* 702 F.2d 989, 996, 217 USPQ 1, 7 (Fed.Cir.1983).[8] Despite appellants' arguments throughout prosecution that heat shrinkable articles with the claimed expansion ratios overcome the longstanding splitting problem, the board and the examiner merely concluded that these ratios would have been obvious without properly responding to appellants' allegations of unexpected results. Although appellants failed to make an adequate showing of unexpected results, if the board or the examiner had considered this point when the case was pending before them and had pointed out that there was no objective evidence of unexpected results, appellants would, at least, have had notice and would have had an opportunity to file objective evidence.[9] Neither the board nor the examiner, however, gave such notice, and, therefore, appellants were led to believe, albeit erroneously, that they had satisfied their burden of going forward with objective evidence to rebut the prima facie

case of obviousness. *In re Rinehart,* 531 F.2d 1048, 189 USPQ 143 (CCPA 1976). In view of the PTO's failure to challenge the sufficiency of appellants' rebuttal evidence until this appeal, when appellants could no longer offer evidence, we conclude that it is necessary to vacate the board's decision on claims 42–51 and 53 and to remand the case to afford appellants the opportunity to submit objective evidence of unexpected results. *See In re Wiechert,* 370 F.2d 927, 933, 152 USPQ 247, 251–52 (CCPA 1967).

## SUMMARY

The decision of the board is *reversed* with respect to claims 52 and 55–64 and *vacated* with respect to claims 42–51 and 53. The case is *remanded* for further proceedings consistent with this opinion.

REVERSED–IN–PART; VACATED–IN–PART; and REMANDED.

---

firmance is not appropriate in view of the PTO's conduct, discussed infra.

**8.** A proper showing of unexpected results will rebut a prima facie case of obviousness. *In re Fenn,* 639 F.2d 762, 208 USPQ 470 (CCPA 1981); *In re Murch,* 464 F.2d 1051, 175 USPQ 89 (CCPA 1972).

**9.** Examiners will consider an affidavit or declaration under 37 C.F.R. § 1.132 if submitted prior to final rejection or with the first response after final rejection for the purpose of overcoming a new ground of rejection or requirement made in the final rejection. *United States Patent and Trademark Office, Manual of Patent Examining Procedure* § 716 (4th ed. rev. 1982).

Affidavits or declarations filed after final rejection will be considered if a satisfactory showing under 37 C.F.R. § 1.116(b) or 37 C.F.R. § 1.195 is made. *Id.* Where the board makes a decision advancing a position or rationale new to the proceedings, an applicant must be afforded an opportunity to respond to that position or rationale by submission of contradicting evidence. *In re Eynde,* 480 F.2d 1364, 178 USPQ 470 (CCPA 1973). Accordingly, if the board or the examiner in this case had stated that there was no objective evidence, appellants would have been entitled to respond by filing such evidence.