847 F.2d 842
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
In re James N. HENDERSON.
 No. 87-1399.
 United States Court of Appeals, Federal Circuit.
 April 27, 1988.
 
 Before ARCHER, Circuit Judge, BALDWIN, Senior Circuit Judge, and MAYER, Circuit Judge.
 BALDWIN, Senior Circuit Judge.
 
 DECISION
 
 1
 This appeal is from the decision of the United States Patent and Trademark Office Board of Patent Appeals and Interferences (board) affirming the examiner's final rejection, under 35 U.S.C. Sec. 103 (1982), of claims 1 through 18 in James N. Henderson and Wyndham H. Boon's (appellants) application serial No. 585,657, filed March 2, 1984. We affirm.
 
 OPINION
 
 2
 The claimed invention is a composition comprising polyethylene terephthalate (PET), a rubber, and a compatibilizing agent. Appellants argued below, and here, that the nonobviousness of their composition stems from blending PET with rubbers through the use of certain block copolymers. They assert further that their claimed invention greatly improves impact strength over similar compositions which do not utilize dual solubility block copolymer compatibilizing agents. The board rejected appellants' claims as obvious under 35 U.S.C. Sec. 103.
 
 
 3
 It is settled that obviousness is a question of law for which the standard of review is correctness or error as a matter of law. E.g., In re Caveney, 761 F.2d 671, 674, 226 USPQ 1, 3 (Fed.Cir.1985). A finding of obviousness hinges on "whether the references, taken as a whole, would suggest the invention to one of ordinary skill in the art." Medtronic, Inc. v. Cardiac Pacemakers, Inc., 721 F.2d 1563, 1582, 220 USPQ 97, 110 (Fed.Cir.1983). In distinguishing between prior art and the invention claimed, the court must look at the invention as a whole. Fromson v. Advance Offset Plate, Inc., 755 F.2d 1549, 1556, 225 USPQ 26, 31 (Fed.Cir.1985). The burden of establishing a prima facie case of obviousness is on the board. In re Piasecki, 745 F.2d 1468, 1471-72, 223 USPQ 785, 787 (Fed.Cir.1984). The board fulfills this burden when it shows that the references suggest to one of ordinary skill in the art, with all of the teachings of the references before him, the claimed invention. See Orthopedic Equipment Co., Inc. v. United States, 702 F.2d 1005, 1013, 217 USPQ 193, 200 (Fed.Cir.1983). "Claims may be obvious in view of a combination of references." Id. Advantages and unexpected results should not be ignored, but neither should they be controlling. See Fromson, supra.
 
 
 4
 The board found that the combined teachings of the three references render appellants' claimed invention obvious to one skilled in the art. It reached this conclusion by carefully considering the implications of the three references, including the impact of Gergen's broad claims and specification. The board met its burden to establish a prima facie case of obviousness when it demonstrated how the references suggested the use of block copolymers to compatibilize polymers. Appellant has pointed to nothing in the board's reasoning which convinces us that that decision is erroneous as a matter of law. Appellants' contentions consist entirely of attorney arguments which urge this court to read Gergen more narrowly than did the board. But appellants provide no references which tell that the board's conclusions were inappropriate.
 
 
 5
 Appellants' second claim is that the evidence presented rebuts the board's prima facie case. The only evidence presented by appellants is the "unexpected results" shown in their examples. The board rejected appellants' assertions that the results were unexpected, and so do we. Appellants suggest that because Joffrion did not give quantitative information about the improvement in impact strength, that one skilled in the art "might expect an improvement of 10%, or perhaps even 100%," but not the magnitude of improvement their examples show. Again, however, appellants provide nothing to support these assertions. The tables provided in the specification express equivocal results. This court will not disturb underlying factual determinations by the board unless they are shown to be clearly erroneous. Panduit Corp. v. Dennison Mfg. Co., 810 F.2d 1561, 1565, 1 USPQ 2d 1593, 1594-95 (Fed.Cir.1987). Appellants have made no such showing. They merely restate their assertions made below that the results would not be expected by one of ordinary skill in the art.
 
 
 6
 The evidence as a whole supports the board's conclusion that appellants' claims are obvious under 35 U.S.C. Sec. 103. Since appellants have not argued their claims separately, they must be considered as one. In re Kaslow, 707 F.2d 1366, 1376, 217 USPQ 1089 (Fed.Cir.1983). Accordingly, we affirm the board's decision rejecting claims 1 through 18.
 
 
 7
 ARCHER, Circuit Judge, concurring.
 
 
 8
 I concur in the result, but write separately to indicate why, in my view, the board did not err in affirming the examiner's rejection.
 
 
 9
 The board met its burden of establishing a prima facie case of obviousness when it demonstrated how the disclosures of Joffrion, Gergen and Kruka, taken collectively and in conjunction with appellants' statements in the application regarding what was known in the art, suggested the use of dual solubility block copolymers to compatibilize the claimed EPDM or EPR rubber/PET polymer blend. The board found that those skilled in the art were aware that PET possessed desirable properties for producing molded articles, but that it had low impact strength. They also knew that a rubber could be blended with PET to obtain improved impact strength, but that there was an incompatibility problem in obtaining such a blend due to the difference in solubilities of these polymers. The board noted that the primary reference, Joffrion, (1) disclosed the desirability of blending EPR and EPDM rubbers with PET to obtain improved physical and mechanical properties, (2) recognized the compatibility problem, and (3) approached the compatibility problem in a manner different from that claimed by appellants. It then cited the Gergen reference for the disclosure that polymeric components of polymer blends could be compatibilized by employing block copolymers having appropriate dual solubility parameters.
 
 
 10
 Appellants contend that there was nothing in the prior art to suggest combining the teachings of Joffrion and Gergen. They state that Joffrion contains no suggestion that rubber/polyester blends can be compatibilized without chemically modifying the rubber utilized in the blend. They also contend that Gergen, which discloses plastic/polyester blends, contains no suggestion that the claimed rubber/polyester blends may be compatibilized by use of block copolymers, because rubbers and polyesters are "presumably more difficult to compatibilize."
 
 
 11
 The board recognized that Joffrion disclosed EPR and EPDM rubbers that had been modified, and that Gergen did not deal with the specific blends of PET and rubber claimed. The board held, however, that one having ordinary skill in the art would have found it prima facie obvious to apply Gergen's basic concept of using dual solubility block copolymers to compatibilize polymer blends to the rubber/PET blend disclosed to be desirable in Joffrion.
 
 
 12
 Appellants have not pointed to anything in the record which indicates that the board's findings as to the teachings of these references and the desirability or incentive to combine them were clearly erroneous. In re Geiger, 815 F.2d 686, 688, 2 USPQ2d 1276, 1278 (Fed.Cir.1987). Nor have they provided any reason why we should "presume" that EPR or EPDM rubbers are more difficult to blend with PET than the "dissimilar engineering thermoplastic" polymers disclosed by Gergen, which include, e.g., polyamides such as nylons, halogenated thermoplastics such as TEFLON, and nitrile barrier resins which may contain synthetic or natural rubber components. In view of the dissimilarity of the polymers blended in Gergen, the appellants' argument that one skilled in the art would not be led to compatibilizing a rubber/polyester blend by use of block co-polymers is unpersuasive.
 
 
 13
 The board also properly determined that the prima facie case of obviousness was not rebutted by evidence in the form of "unexpected results" shown in the examples of appellants' specification. As noted by the examiner, with whom the board expressed "complete agreement," Joffrion discloses that improved physical and mechanical properties of polyesters can be obtained if the compatibility between polyester and EPDM or EPR rubber is improved. This disclosure supports the board's determination that the claimed improvement in impact properties shown in the examples would have been expected for a compatibilized blend of PET and EPDM or EPR rubber.
 
 
 14
 MAYER, Circuit Judge, dissenting.
 
 
 15
 I believe the Board erred in concluding that the claimed invention would have been obvious to one skilled in the art.
 
 
 16
 As the Board recognized, rubber and polyester are chemically incompatible and therefore difficult to blend. The claimed invention solves the incompatibility problem by adding a third agent, a block copolymer, to the polyester/rubber blend. The block copolymer has a portion that is soluble with polyester and a portion soluble with rubber, thereby eliminating the problem caused by the differences in solubility parameters between rubber and polyester.
 
 
 17
 Contrary to the Board's conclusion, none of the cited references, either alone or in combination, suggests or teaches the claimed invention. See, e.g., In re Fine, 837 F.2d 1071, 1075, 5 USPQ2d 1596, 1599 (Fed.Cir.1988). Joffrion, U.S. Patent No. 4,251,644, the primary reference relied on by the Board, solves the problem of incompatibility between rubber and polyester in a manner entirely different from the claimed invention. In Joffrion, the rubber is chemically altered by the addition of polar groups to make it more compatible with polyester. In contrast, the claimed invention does not modify the rubber; it adds a third agent, a block copolymer, to improve compatibility. There is no suggestion or teaching in Joffrion that rubber and polyester can be combined without chemically altering the structure of the rubber.
 
 
 18
 Nor is there any suggestion to combine Joffrion with Gergen et al., U.S. Patent No. 4,090,996. Gergen combines different forms of plastics using block copolymers. The Commissioner does not dispute, however, that it is more difficult to combine rubber and polyester than it is to combine plastics. So the mere fact that plastic/plastic blends can be made compatible by block copolymers would not lead one of ordinary skill in the art to conclude that a rubber/polyester blend could be made compatible in that manner.
 
 
 19
 The Commissioner argues, however, that the fact that Gergen relates to plastics is not fatal to rejection because plastics, polyesters and rubbers are all polymers and would be expected to act in a similar manner. This is unpersuasive. As Henderson points out, polymers are an extremely diverse class of materials. For example, silk, wool, Teflon, styrene, nylon and polyesters are all classified as polymers. Accordingly, the mere fact that rubbers and polyesters are polymers would not lead one of ordinary skill in the art to conclude that they could be blended in the same way as plastics.
 
 
 20
 Gergen and Joffrion disclose, at most, that one skilled in the art might find it "obvious to try" blending rubber and polyester using block copolymers. Whether a particular combination might be obvious to try is not, however, a legitimate test of patentability. Id.; In re Goodwin, 576 F.2d 375, 377, 198 USPQ 1, 3 (CCPA 1978). Accordingly, I would hold that the Patent and Trademark Office has failed to establish its prima facie case.
 
 
 21
 Even assuming a prima facie case, I believe it was rebutted by the unexpected results. There is no dispute that the impact strength of the claimed composition is higher than in prior art compositions not containing compatiblizing agents. In some examples, there were increases of impact strength ranging from 300% to 600%. Joffrion did report improved impact strength, but it did not give any quantitative information about the improvement to be expected. So there is nothing to suggest that one skilled in the art would expect the magnitude of improvement in impact strength observed in the claimed invention. Cf. In re Antonie, 559 F.2d 618, 620, 195 USPQ 6, 8 (CCPA 1977) (exception to obviousness rule "in cases where the results of optimizing a variable, which was known to be result effective, were unexpectedly good").
 
 
 22
 Further, Henderson's specification shows that the claimed composition can be molded while there is no showing that the products disclosed in Joffrion can be. So this was not suggested by the prior art, either.